**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11875

Non-Argument Calendar

_____

HALEY COLE,

*Plaintiff-Appellant,*

*versus*

LAWRENCE CHRISTOPHER YOUNG,

ELLYN SHOOK,

RYAN OAKES,

   in their individual and professional capacities,

ACCENTURE, LLP,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-01897-MHC

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

2                    Opinion of the Court                    25-11875

PER CURIAM:

Haley Cole appeals the district court's order dismissing Cole's first amended complaint bringing employment-related claims against Accenture, LLP ("Accenture"), former Accenture employee Lawrence Young, and Accenture executives Ellyn Shook and Ryan Oakes, and denying leave to file a second amended complaint. Cole presses five arguments on appeal, contending that the district court erred in: (1) dismissing the claims against Shook and Oakes for lack of personal jurisdiction without allowing jurisdictional discovery; (2) dismissing the claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for failure to timely exhaust administrative remedies; (3) dismissing the constructive discharge claim for failure to state a claim; (4) denying leave to file a second amended complaint adding claims under the Americans with Disabilities Act ("ADA") after finding that the proposed amendment was futile; and (5) declining to exercise supplemental jurisdiction over state-law claims. We address each of these arguments in turn. After careful review, we affirm the district court's decision.

## I.    Background

### A. Cole's Allegations

Cole, a Georgia resident, was an employee at Accenture from May 2016 until Cole resigned on December 21, 2023.[1] Cole

---

[1] To evaluate the district court's grant of the motion to dismiss, we accept the facts in the first amended complaint as true and construe them in the light

primarily worked remotely from home unless there was a need to meet colleagues in person.  According to the complaint, Cole is "an autistic, non-binary individual who was assigned female at birth." During Cole's tenure at Accenture, "Cole received several promotions, raises, and bonuses due to . . . superior work performance."  In January 2020, Cole began reporting to Young as Cole's direct supervisor and career counselor.    Young's responsibilities in this role including "guiding . . . Cole's career progression" and recommending "promotion[s], salary increases, performance bonuses, and other professional development opportunities."  The working relationship between the two meant they were "in constant communication . . . on an almost daily basis."  Young developed a "special and personal relationship," with Cole, frequently alluding to a "continued life partnership" between the two.

Young developed and frequently used pet names for Cole between December 2020 and January 2023, including "Doodle Bug" and "Little Sister."  Over time, Young's text messages to Cole not only increased in volume but became "increasingly personal and sexual in nature" and included sexually explicit discussion of Young's new romantic partner.    Following a Thanksgiving gathering at Young's house in November 2021, Young "inappropriately inquired whether . . . Cole was clothed or unclothed during a sensory deprivation session for anxiety relief."

---

most favorable to Cole.  *See Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1302 (11th Cir. 2022).

On January 1, 2022, Young sent Cole roughly 162 text messages.  After hours of messages that turned sexual in nature, Young sent Cole "more than a dozen pornographic images of himself" and provided graphic descriptions of his sexual activity and genitalia.  Young asked Cole to send him images in return.  Cole initially rebuffed Young's requests, which led Young to call Cole a "tease" who was "rude" for making him "be patient."  Cole, fearing potential career repercussions, eventually relented.  Young's messages turned to descriptions of Cole's genitalia and included telling Cole that Young wanted to "put his seed" in Cole and inquiring as to Cole's preferred sexual positions.  Young invited Cole to his house to engage in sex, but Cole refused.

Young then video called Cole.  When Cole answered the call, Young exposed his penis and began masturbating to the images Cole had sent him.  During this call, Young "forced" Cole to expose Cole's genitals to Young while Young continued masturbating and eventually ejaculated.  At no point had Cole welcomed Young's sexual advances or have any desire to engage in a romantic or sexual relationship with Young.

Following the January 1, 2022, incident, Young continued "the same inappropriate sexual harassment" while managing Cole's career and day-to-day work projects, including attempts to pressure Cole to come over to his house and forcibly hugging Cole without permission in June 2022.  From February 2022 through "the entire summer of 2022," Cole began experiencing suicidal ideations, depression, panic attacks, uncontrollable periods of

crying, fear, and anxiety, feelings of guilt, shame, and embarrassment, and an overall decline in mental health linked to daily interactions with Young. Doctors diagnosed Cole with "major depression, anxiety, OCD, and ADHD" in March 2022, and each day Cole continued to work with Young "inflicted additional and compounding trauma." Cole also "developed symptoms of PTSD."

Cole's declining mental health led to taking time off from work, including a Family and Medical Leave Act (FMLA) leave of absence in April 2022 and short-term disability leave in May 2022. In August 2022, Cole underwent a partial hospitalization program to treat major depression, gender dysphoria, and suicidal ideations. Cole transferred to a sober living program in November 2022. And by December 2022, Cole's mental and physical health deteriorated so severely that doctors diagnosed Cole with anorexia nervosa and began treating the eating disorder.

Even though Cole was on leave in December 2022, Young informed Cole that Cole would receive a bonus and a raise. Cole reported Young's prior conduct to Accenture on December 2, 2022, and then met with representatives from Accenture on December 5, 2022, to provide more information. Cole remained on paid leave until after the investigation concluded. The representatives also instructed Cole not to discuss Young's conduct with coworkers at Accenture. Shook was involved in the investigation as a member of Accenture's executive team.

On January 10, 2023, Accenture informed Cole that Accenture would no longer employ Young and advised that Cole could return to work on January 18, 2023, after Young departed. On January 19, 2023, the day after Cole returned to work, a senior Accenture employee e-mailed Cole's group to announce that Young had "decided to pursue his passion outside of Accenture" and that Accenture would "always appreciate [Young's] personal style and passion for public service," which was an effort to "protect . . . Young's reputation and character, despite [h]is sexual misconduct" while continuing to prevent Cole from discussing the matter with colleagues. Cole viewed this action as "silencing behavior."

Cole discovered upon returning to work that Accenture had assigned Cole to a new team with a female supervisor, and that Oakes, a close friend of Young's, was now Cole's career counselor. The new team had "little to no direct client contact" and Cole viewed it as "an inferior team." Cole believed that Oakes was at least one of the decisionmakers involved in the transfer decision. Cole struggled to transition back to work, reaching a "breaking point" on January 31, 2023, that resulted in Cole taking several days off. In February 2023, Cole asked Accenture whether Cole could disclose Young's conduct to the new supervisor but was told in March 2023 not to do so.

By May 5, 2023, Cole's mental health team considered whether admission to an intensive outpatient eating disorder program was necessary to protect Cole's life. Cole's last work

assignment submission before going back on medical leave occurred on May 16, 2023. Cole took another leave of absence on May 31, 2023; unable to work, Cole submitted a worker's compensation claim on June 15, 2023. Accenture denied the claim because its worker's compensation did not cover harassment or mental illness. Cole appealed a previous denial for long-term disability on June 23, 2023, which was granted on September 18, 2023.

While still on leave, Cole e-mailed Accenture on October 31, 2023, informing Accenture of Cole's intention to report Young to the State of Georgia for sexual misconduct and seeking a transfer back to Cole's previous team. Cole also again sought permission to discuss Young's conduct with coworkers. Accenture representatives responded on November 14, 2023, and explained that Cole could tell coworkers about Young's conduct if required but questioned whether such conversations were necessary. Despite approval for long-term disability through November 2024, Cole "reached a breaking point" on December 21, 2023, and e-mailed Shook and Oakes to "resign from Accenture under duress."[2]

The resignation e-mail cited Young's prior "grooming and sexual harassment"—and the resulting mental effects—as the reason for Cole's resignation, as well as the Accenture representative's instructions to Cole to avoid disclosing the

---

[2] Cole attached the e-mail to the complaint and referenced it in the complaint. Thus, we may properly consider it at the motion-to-dismiss stage. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

harassment to colleagues. The e-mail also noted that, after Accenture told Cole not to disclose Young's conduct, Cole had "asked to be transferred to another team" because Cole could not imagine being unable to tell colleagues what Young had done. But upon returning to work in January 2023 and attempting to adjust to the new team and new work, "it became obvious that separating [Cole] from [Cole's] team of 7-years was never a viable long-term solution." Cole expressed unhappiness with the way Accenture had handled things and a need to resign as a result.

## B. Cole's Litigation

On December 29, 2023, Cole filed a discrimination charge against Accenture with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and the ADA based on sex, "gender identity and sexual orientation," retaliation, and disability. On March 21, 2024, the EEOC issued a Notice of Right to Sue.

Cole then sued Accenture, and Young, Shook, and Oakes in their individual capacities, on April 30, 2024, and filed a first amended complaint on May 2, 2024. Among the ten causes of action were alleged violations of Title VII for gender discrimination, sexual harassment, and hostile work environment, as well as a constructive discharge claim for the defendants creating an environment "so intolerable that a reasonable person would have felt compelled to resign." Cole further alleged that Accenture, Oakes, and Shook violated Title VII by retaliating after Cole filed a harassment complaint against Young. The complaint also included

five state-law claims for battery, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention.

Accenture, Shook, Oakes, and Young moved to dismiss the first amended complaint because the complaint failed to state a claim, many of the claims were untimely, and the court lacked personal jurisdiction over Shook and Oakes. In support of their jurisdictional argument, Shook and Oakes attached sworn declarations to their motion explaining that they were New York and Connecticut residents, respectively, with limited to no connection to Georgia. Cole responded, arguing that Shook and Oakes directed actions toward Georgia and caused damages in Georgia.

The magistrate judge recommended granting the motions in part. As to Shook and Oakes, the magistrate judge recommended dismissing them as defendants for lack of personal jurisdiction as neither were Georgia residents, committed tortious acts in Georgia, or could reasonably expect to be haled into court in Georgia. As to the Title VII claims against Young, the magistrate judge recommended their dismissal as Title VII does not allow for individual liability.[3] The magistrate judge also recommended

---

[3] In its final order dismissing the complaint, the district court noted that Cole had conceded Title VII does not provide individual liability against other employees or supervisors. Thus, even if the court did have personal jurisdiction over Shook and Oakes, the Title VII claims against them would fail for the same reason.

dismissing the gender discrimination, hostile work environment, and retaliation claims as untimely because the alleged conduct occurred more than 180 days before the EEOC filing and Cole had not shown a basis for equitable tolling or that the continuing violation doctrine applied.  The magistrate judge next concluded that the Title VII constructive discharge claim, while timely, failed to state a claim because the complaint had not pleaded circumstances that would have compelled a reasonable person to resign.  Finally, having recommended dismissal of all the federal claims, the magistrate judge recommended dismissal without prejudice of the remaining state court claims.

Cole filed objections to the magistrate judge's first report and recommendation ("R&R").  Part of these objections included a request for jurisdictional discovery as to Shook's and Oakes's contacts with Georgia.  Cole simultaneously moved for leave to file a second amended complaint to add Accenture PLC as a party, add claims against Accenture LLP and PLC under the ADA, and voluntarily dismiss Cole's Title VII claims against Young, Shook, and Oakes.[4]  In the proposed second amended complaint, Cole largely relied on the same facts but limited the Title VII claims to Accenture only.  As for the ADA claims against Accenture, the second amended complaint alleged that Accenture, Oakes, and Shook "repeatedly refused to accommodate [Cole's]

---

[4] We refer to Accenture LLP and PLC together as Accenture.

accommodation requests"[5] and instead "subjected [Cole] to . . . disparate treatment, retaliation, and a hostile work environment due to [Cole's] mental health disabilities.

The magistrate judge considered the proposed amended complaint and issued a second R&R, recommending that the district court deny leave to amend because amendment would be futile. Specifically, the amendment would not cure the personal jurisdiction problems as to Shook or Oakes, nor could Cole cure the time-barred nature of the Title VII gender discrimination, hostile work environment, and retaliation claims, or adequately plead constructive discharge. The new ADA claims were (A) time-barred as they fell outside the statutory limitations period, (B) did not relate back to the original complaint, and (C) even setting aside these procedural problems, they failed to state a claim.

Cole filed objections to the second R&R. The district court entered an order overruling the objections to both the first and second R&Rs. It found that the court did not have personal jurisdiction over Shook and Oakes and that Cole failed to diligently pursue the jurisdictional discovery request by raising it for the first time in the objections to the first R&R, despite having ample opportunities to make the request earlier. The court next concluded that Title VII did not allow for liability against individuals, and that the gender discrimination, hostile work

---

[5] Cole's accommodation requests included (1) a request to transfer back to Cole's old team, and (2) a request to disclose to colleagues Young's conduct and its effects on Cole.

environment, and retaliation claims under Title VII were clearly untimely and that the continuing violation doctrine did not apply. As to constructive discharge, the court found that Cole failed to state a claim upon which the court could grant relief because the conditions alleged did not plausibly show a situation so intolerable that a reasonable person would have felt compelled to resign. As to the motion for leave to amend the complaint, the court found that the proposed second amended complaint would not cure the deficiencies in the first amended complaint as to the Title VII claims it retained. And as for the new ADA claims, the court found they would be futile because the allegations failed to state a claim for failure to accommodate, disparate treatment, retaliation, hostile work environment, or constructive discharge under the ADA. Accordingly, the court granted the motions to dismiss, dismissed the claims against Shook and Oakes without prejudice for lack of personal jurisdiction, dismissed the Title VII claims with prejudice, and declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice. It also denied the motion for leave to file a second amended complaint.

Cole moved for reconsideration, which the court denied, and then timely appealed.

## II.    Discussion

Cole raises five issues on appeal: (1) the district court should not have dismissed the claims against Shook and Oakes for lack of personal jurisdiction without allowing jurisdictional discovery; (2) the district court should not have dismissed the Title VII

complaints as time barred;  (3) the district court should not have dismissed the constructive discharge claim for failure to state a claim;  (4) the district court erred in finding the proposed ADA claims would be futile and denying leave to file the second amended complaint;   and (5) the district court should have exercised supplemental jurisdiction over the state-law claims.  We address each issue in turn.[6]

## A.  Personal Jurisdiction

Cole argues that the court had personal jurisdiction over Shook and Oakes because the two defendants directed Cole's work assignments in Georgia, participated in personnel decisions affecting Cole's employment in Georgia, and caused harm to Cole in Georgia.  Cole further argues that any factual dispute about

---

[6] Cole also raises perfunctory challenges to the district court's denial of post-judgment relief, "cumulative errors" that resulted in a violation of Cole's due process rights, and whether the district court's entering of final judgment on the merits of the ADA claims "impos[ed] unwarranted res judicata consequences."  The initial brief listed these issues in the statement of the issues, but did not further explain the issues in the argument section of the initial brief.  Instead, Cole attempted to develop the issues for the first time in the reply brief.  An appellant who fails to raise a claim plainly and prominently in their opening brief by, for example, devoting a discrete section of their argument to the claim, abandons it on appeal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  We generally will not consider an issue raised for the first time in a reply brief. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023).  Thus, we decline to address these issues.

Shook's and Oakes's supervisory authority should have led the court to allow jurisdictional discovery.

"We review *de novo* whether the district court had personal jurisdiction over a nonresident defendant." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "In doing so, we accept as true the allegations in the complaint" and review the district court's jurisdictional factfinding for clear error. *Id.* We review a district court's denial, grant, or limitation of a motion for discovery for an abuse of discretion. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1274. "Where . . . the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quotation omitted).

Analyzing "whether personal jurisdiction exists requires a two-step inquiry." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). First, we consider whether the exercise of jurisdiction over the nonresident defendant is consistent with the forum state's long-arm statute. *Id.* If so, "we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause . . . , which requires that the defendant have minimum contacts with the forum state and that

the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id.* (quotation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–77 (1985).

When a federal court uses a state long-arm statute, it construes the statute as the state's supreme court would. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010). Georgia's long-arm statute explains:

> A court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> > (1) Transacts any business within this state;
> >
> > (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]
> >
> > (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)–(3). "[T]he Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process" and "must be read literally." *Diamond Crystal*, 593 F.3d at 1259.

The Georgia Supreme Court has held that for subsection (2) of Georgia's long-arm statute to apply to a non-resident defendant, the defendant must commit a tortious act or omission within Georgia rather than a tortious act or omission in another state that merely causes an injury in Georgia.[7] *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 353–54 (Ga. 2005); *see also Anderson v. Deas*, 632 S.E.2d 682, 683 (Ga. Ct. App. 2006) ("[W]here a person commits a tortious act outside this state causing injury in the state, paragraph (3) rather than (2) applies—thereby requiring the presence of one of the contacts set forth in paragraph (3) before long arm jurisdiction may be exercised if the tortious injury but not the act occurs in this state.").

District courts "have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to

---

[7] Cole did not challenge the magistrate judge's finding that personal jurisdiction over Shook and Oakes was inconsistent with O.C.G.A. § 9-10-91(1) or (3) in Cole's objections to the first R&R. Cole has thus waived the issue, and we decline to address it. *See Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1097 (11th Cir. 2024) ("A party who fails to object to a magistrate judge's findings or recommendations in [a R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." (quotation omitted)).

entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). While "the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support [the] allegations of jurisdiction." *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984). In other words, generally, dismissal without affording the plaintiff an opportunity to pursue jurisdictional discovery is an abuse of discretion. *See id.* But a district court does not abuse its discretion when the plaintiff fails to formally move for jurisdictional discovery, "burie[s] such requests in [the] briefs," or fails to take "reasonable steps to seek discovery" during the time in which a motion to dismiss for lack of personal jurisdiction is pending. *Mazer*, 556 F.3d at 1280–81.

The district court lacked personal jurisdiction over Shook and Oakes under O.C.G.A. § 9-10-91(2). Cole failed to plausibly allege any tortious acts or omissions committed by Shook and Oakes within Georgia and instead relied solely on the effects Shook's and Oakes's actions had on Cole in Georgia, which is insufficient to satisfy O.C.G.A. § 9-10-91(2). *Innovative Clinical & Consulting Servs.*, 620 S.E.2d at 353–54. The district court also did not abuse its discretion in declining the belated request for jurisdictional discovery filed after the magistrate judge had issued his first R&R. *See Mazer*, 556 F.3d at 1280–81. Thus, the district court properly dismissed the claims against Shook and Oakes for lack of personal jurisdiction.

### B.  Exhaustion

Cole argues that the district court should not have dismissed most of the Title VII claims as time-barred.  For the hostile work environment claim, Cole claims the complaint "allege[d] a continuous pattern of supervisory harassment, coercive power imbalance, and retaliatory workplace conditions" that fell within the limitations period.  Cole raises similar arguments about the gender discrimination and retaliation claims, arguing that Cole's reassignment, restricted disclosure requirements, deterioration in workplace standing, and limited advancement opportunities from the "inferior" team extended into the limitations period.  Cole also argues that the claims, even if not timely, should be subject to equitable tolling based on mental health struggles which prevented Cole from timely filing the complaint.

"We review *de novo* [a] district court's ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1302 (11th Cir. 2022) (quotation omitted).  We also "review de novo whether undisputed facts satisfy the legal prerequisites for equitable tolling."  *Beazer v. Richmond Cnty. Constructors, LLC*, 169 F.4th 1082, 1086 (11th Cir. 2026).  At the pleadings stage, a claim's dismissal as untimely "is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  *See Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319–20 (11th Cir. 2021) (quotation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions "are not entitled to the assumption of truth"; instead, "they must be supported by factual allegations." *Id.* at 679.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sex-based discrimination under Title VII encompasses discrimination based on transgender status and sexual orientation. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 661–62 (2020). Sexual harassment can also constitute sex-based discrimination under Title VII. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). Title VII's "opposition clause" prohibits an employer from retaliating against an employee because they have opposed any practice that is unlawful under Title VII. 42 U.S.C. § 2000e-3(a); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). "[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act . . . ." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).

"Before a potential plaintiff may sue for discrimination under Title VII, [the plaintiff] must first exhaust [the plaintiff's] administrative remedies," and "[t]he first step down this path is filing a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). In a non-deferral state[8] such as Georgia, a plaintiff must bring a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Wilkerson*, 270 F.3d at 1317. The applicable period for filing an EEOC charge begins to run when the employee receives unequivocal notice of an adverse employment decision. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000).

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Generally, a plaintiff seeking equitable tolling must "prove (1) that [the plaintiff] has been pursuing [the plaintiff's] rights diligently, and (2) that some extraordinary circumstance stood in [the plaintiff's] way and prevented timely filing." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc) (quotation omitted). "The plaintiff bears the

---

[8] A "deferral state" is one that "prohibit[s] the unlawful employment practice at issue and ha[s] established state or local authorities to grant or seek relief for such practice." *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262–63 (11th Cir. 2001). Georgia is a non-deferral state. *Wilkerson*, 270 F.3d at 1317.

burden of showing that such extraordinary circumstances exist." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).

In the Title VII context, we have said that equitable tolling is appropriate in situations where (1) an action was pending before a state court, (2) the defendant concealed facts supporting a cause of action, or (3) the defendant misled the plaintiff about the nature of the plaintiff's rights under Title VII. *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986). A plaintiff seeking equitable tolling based on a mental impairment must establish a causal connection between the impairment and the plaintiff's ability to file timely. *See Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005).

Additionally, "[t]he continuing violation doctrine allows [a] plaintiff to sue on otherwise time-barred claims if the defendant's actions violate a plaintiff's rights on a repeated or ongoing basis." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 992 (11th Cir. 2025) (quotation omitted). "In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993) (quotation omitted). Discrete employment actions such as termination, failure to promote, denial of transfer, or refusal to hire each trigger a separate clock for filing an EEOC charge, and the "continuing violation doctrine cannot convert related discrete acts

into a single unlawful practice for the purposes of timely filing." *Jimenez*, 146 F.4th at 992 (quotation omitted).

Hostile work environment claims, by contrast, are "different in kind from discrete acts" because their "very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Thus, the Supreme Court has "eschewed the use of the continuing violation doctrine in hostile work environment cases," *see Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir. 2002), instead holding that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice," *Morgan*, 536 U.S. at 117 (quotation omitted). Thus, for an EEOC charge to be timely as to a hostile work environment claim, the employee need only file the charge within 180 days "of any act that is part of the hostile work environment." *Id.* at 118. Similarly, for a hostile-environment constructive discharge claim, so long as the acts alleged are part of the same claim under consideration, the relevant filing period will only begin running after the last relevant act occurs. *Jimenez*, 146 F.4th at 993.

As a preliminary matter, there is no individual liability under Title VII, so the district court did not err in dismissing Cole's Title VII claims against Young. *See Dearth*, 441 F.3d at 933 (explaining that relief under Title VII is available only against the employer and not against individual employees). As for the remaining Title VII claims against Accenture, Cole filed the EEOC charge against Accenture on December 29, 2023. Thus, any unlawful

employment practice must have occurred within 180 days of that filing—on July 2, 2023, or later—for the action to proceed under Title VII. *Wilkerson*, 270 F.3d at 1317.

Cole's claims do not allege conduct within that 180-day window. Young left Accenture in January 2023, well outside the range, and any sexual harassment or gender discrimination that he inflicted on Cole as part of his role at Accenture necessarily terminated then as well. The harm alleged, while severe, reflects a "present consequence" of the previous discrimination, and thus does not transform the past conduct into a continuing violation. *See Calloway*, 986 F.2d at 448. Cole's retaliation claims meet a similar fate. The alleged retaliatory acts, including Accenture's efforts to dissuade Cole from discussing Young's conduct, the reassignment to another team, and Accenture's failure to provide "accommodations" all occurred before July 2, 2023. The last time Accenture told Cole not to discuss Young's conduct was March 2023, and Accenture reassigned Cole to another team in January 2023. Each of these discrete acts did not represent a continuing violation and thus did not extend the filing period. *See Jimenez*, 146 F.4th at 992.

While a hostile work environment claim differs from the previously discussed discrete acts, Cole failed to allege any act that was part of a hostile work environment that occurred after July 2, 2023. *See Morgan*, 536 U.S. at 118. This claim depended on Young's actions and Cole's perception of Accenture's support for Young, all of which ended by January 2023. And the last act that an observer

could possibly view as retaliation (and creating a hostile environment) was Accenture's denial of the worker's compensation claim which happened before July 2, 2023. Cole's voluntary resignation in December 2023 also did not extend the limitations period, because as we will discuss in the next subsection, the resignation was not a constructive discharge. Furthermore, contrary to Cole's contentions, the timing of each event was readily apparent from the face of the complaint; thus, the district court did not err in determining the statute barred the untimely claims when the court considered the Rule 12(b)(6) motion. *See Karantsalis*, 17 F.4th at 1319–20.

Similarly, the district court did not err in concluding that equitable tolling did not apply to Cole's claims. While Cole's first amended complaint detailed mental harms resulting from Young's sexual harassment and Accenture's actions, the complaint failed to plausibly allege that these psychological harms prevented timely filing. Moreover, the complaint establishes that Cole pursued other legal rights during the relevant period, including, *e.g.*, filing a claim for long-term disability in September 2022, submitting a claim for worker's compensation around June 2023, appealing the denial of a request for long-term disability on June 23, 2023, and e-mailing Accenture on October 31, 2023, expressing an intent to report Young to the State of Georgia. *See Villarreal*, 839 F.3d at 971; *Lawrence*, 421 F.3d at 1226–27. All told, these other actions indicate that Cole could have filed the EEOC action earlier, and thus equitable tolling does not apply.

In sum, the district court did not err in dismissing Cole's gender discrimination, hostile work environment, and retaliation claims under Title VII in the first amended complaint as time-barred.[9]   The employment actions underlying these claims occurred more than 180 days before Cole filed the December 2023 charge with the EEOC.  The continuing violation doctrine does not save these claims.  And Cole's pursuit of other legal rights throughout 2022 and 2023 belied the belated assertion in Cole's objections to the R&R that equitable tolling should apply based on Cole's mental health struggles.[10]

### C.  Constructive Discharge

Cole argues that the complaint plausibly alleged the working conditions at Accenture had become objectively intolerable, which meant Cole's departure was a constructive discharge and not a resignation.  In support of this conclusion, Cole points to Accenture's removal of Cole from core responsibilities, reassignment to another less prestigious team, and refusal to provide accommodations.  Cole also argues that the resignation's reasonableness was a factual issue that the court should not have resolved at the motion-to-dismiss stage.

---

[9] Because we find that these claims are time barred, we need not reach nor express any opinion on their merits.

[10] The proposed second amended complaint would not have cured the timeliness constraints on the Title VII claims because it added no facts showing conduct that occurred during the relevant 180-day window.

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [the employee] to quit [the] job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (quotation omitted). "A plaintiff must show the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Id.* (quotation omitted). The time between the objectionable acts and the plaintiff's resignation is relevant to assessing whether a reasonable person would have felt compelled to resign. *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1313–14, 1317–18 (11th Cir. 1989) (affirming a district court's finding that a corporate employer did not constructively discharge employees where the sexual harassment stopped almost two weeks before the employees' resignations).

"Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case," *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004), though "[e]stablishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim," *Bryant*, 575 F.3d at 1298. A plaintiff seeking to establish a hostile work environment must establish that he suffered harassment based on a protected characteristic that was sufficiently severe or pervasive to alter the conditions of his employment, and the employer was responsible for the hostile work environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Cole's constructive discharge claims fail to state a situation that would have forced a reasonable person to resign. Young left Accenture in January 2023, nearly a year before Cole's December 2023 resignation. *See Steele*, 867 F.2d at 1313–14, 1317–18. As for the alleged acts of retaliation, the reassignment to another team (at Cole's request) was in January 2023, as was Accenture's alleged protection of Young's reputation upon Young's exit. The initial instructions to Cole not to discuss the harassment while the investigation was ongoing occurred in December and January 2023, with the last denial in March 2023. When Cole asked again about discussing Young's harassment with colleagues in October 2023, Accenture allowed Cole to do so in November 2023. Combined, these facts undermine any plausible claim that Accenture deliberately made Cole's working conditions so intolerable that a reasonable person would have felt compelled to resign. *See Bryant*, 575 F.3d at 1298.

Finally, contrary to Cole's argument, the district court did not engage in factfinding as to constructive discharge. Instead, it applied the correct standard for a motion to dismiss, treating the factual allegations as true, before determining that even if true, the facts did not show Accenture constructively discharged Cole based on the analysis above. *See Doe*, 51 F.4th at 1302.

### D. Leave to Amend to Add ADA Claims

Cole argues that the district court should have granted leave to amend the complaint and add the ADA claims against Accenture. Cole contends that the second amended complaint

would have been the first substantive chance to amend, which Cole should have received under our precedent.[11] In any event, Cole argues that the court applied the wrong standard in resolving factual disputes against Cole. Instead, the ADA claims were timely because they share the same factual nucleus as the facts in the complaint, meaning they related back to the date of the first amended complaint under Federal Rule of Civil Procedure 15(c). Cole contends the second amended complaint plausibly stated a claim for relief under the ADA.

"Generally, a district court's decision to deny a motion to amend a complaint is reviewed for an abuse of discretion." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1092 (11th Cir. 2021). "But we will review *de novo* an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail." *Id.* (quotation omitted).

Under Federal Rule of Civil Procedure 15(a), once the time for amending as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before

---

[11] Cole filed the initial complaint on April 30, 2024, and the first amended complaint on May 2, 2024. The first amended complaint removed the defendant's addresses at their request but was otherwise the same complaint.

the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (quotation omitted). But a district court need not grant leave where amendment would be futile. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). In other words, "[b]ecause justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

Cole's ADA claims fell into three categories: (1) reasonable accommodation; (2) disparate treatment; (3) hostile work environment and constructive discharge; and (4) retaliation. For the reasons below, we agree with the district court that the second amended complaint failed to state an ADA claim.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff who alleges that an employer has discriminated against them in violation of the ADA must make out a prima facie case showing that (1) the plaintiff has a disability, (2) the plaintiff is a qualified individual, and (3) the defendant unlawfully discriminated against

the plaintiff because of the plaintiff's disability. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).[12]

An employer discriminates against a qualified individual because of the individual's disability when the employer fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A). A reasonable accommodation is one that "enables the employee to perform the essential functions of the job." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998). An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made," and "[o]nly after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that [the] employer has discriminated against [the employee]." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999).

Additionally, the ADA further provides that "[n]o person shall discriminate against any individual because such individual

---

[12] On appeal, the parties only dispute the third element, whether Accenture discriminated against Cole based on disability. We accordingly limit our review to whether the second amended complaint states a claim on that point and, for the purposes of the motion to dismiss, assume that Cole satisfies the first two elements.

25-11875                Opinion of the Court                31

has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). "This provision creates a prohibition on retaliation under the ADA that is similar to Title VII's prohibition on retaliation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). To establish retaliation under the ADA, "a plaintiff must show (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Id.*

Finally, a plaintiff alleging disparate treatment under the ADA must "prove that [the plaintiff was] treated less favorably than a similarly situated, non-disabled person." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275 (11th Cir. 2022). In the Title VII context[13], we have held that a hostile work environment claim requires the following showing:

> (1) [the plaintiff] belong[ed] to a protected group; (2) [the plaintiff] was subject[ed] to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment; and (5) [the] employer was responsible for the hostile work environment.

---

[13] We have never addressed whether a hostile work environment is a viable claim under the ADA. But for the purposes of this motion to dismiss, we assume that it is and that Title VII's standard would also apply to such a claim. Even assuming such claim could be viable, Cole's allegations are insufficient.

*Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024) (quotation omitted).

Cole's proposed ADA claims were futile, and the district court did not err in denying leave to bring the claims in a second amended complaint. The failure-to-accommodate claim rested on the October 31, 2023, e-mail requesting a transfer back to Cole's former team and to speak with coworkers about Young's sexual harassment and its effect on Cole. We assume for purposes of the motion to dismiss stage that these are reasonable requests for accommodations and that these requests related to Cole's disabilities. While Accenture initially encouraged Cole to avoid disclosing to coworkers Young's conduct and its effects on Cole, Accenture explicitly permitted Cole to talk to coworkers about Young's sexual harassment on November 14, 2023. Thus, Accenture granted Cole the requested accommodation, and the second amended complaint failed to state a claim for failure to accommodate based on this request. *Gaston*, 167 F.3d at 1364. As for Cole's request to return to the old team, the October 2023 e-mail stated that Cole was requesting to transfer back to the old team "when [Cole] return[ed] to work."[14] Because Cole did not

---

[14] While Accenture attached this e-mail to its motion to dismiss, a court "may consider exhibits attached to a motion to dismiss without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019). Cole did not contest the district court's consideration of the e-mail and has thus

return to work before resigning in December 2023, Accenture's failure to immediately respond to the request did not plausibly amount to a denial of it. *See id.* Accordingly, Cole failed to state a plausible claim for failure-to-accommodate based on this request.

Cole's second amended complaint also failed to state a claim for disparate treatment or a hostile work environment under the ADA. While the complaint described various acts of alleged discrimination and harassment by Accenture in support of these claims—including its instruction not to disclose Young's sexual harassment to Cole's colleagues, its reassignment of Cole to a different team upon Cole's return to work in January 2023, and its efforts to protect Young's reputation,—the second amended complaint made no allegations suggesting that Accenture took these alleged discriminatory and harassing actions based on Cole's disabilities. *See Reed*, 206 F.3d at 1061; *Copeland*, 97 F.4th at 774.

Lastly, Cole's ADA retaliation claim relied on the "close temporal proximity" between the "constructive discharge" in December 2023 and Cole's requests for an accommodation. But because the complaint failed to state a hostile work environment claim, it also necessarily failed to allege a constructive discharge and thus failed to allege a link between a protected activity and an

---

abandoned any challenge Cole may have had. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *Sapuppo*, 739 F.3d at 681.

adverse employment decision.  *See Bryant*, 575 F.3d at 1298; *Stewart*, 117 F.3d at 1287.[15]

### E.  Supplemental Jurisdiction

Finally, Cole argues that the district court erred in declining to exercise supplemental jurisdiction because Cole still had viable federal claims.  Cole also contends that the district court should have analyzed whether judicial economy, convenience, fairness, and comity favored retaining supplemental jurisdiction.

We review a district court's decision to decline supplemental jurisdiction over a claim for abuse of discretion. *Harris-Billups ex rel. Harris v. Anderson*, 61 F.4th 1298, 1302 n.4 (11th Cir. 2023); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).

In civil actions, the district courts "have supplemental jurisdiction over all other claims that are so related to [those] claims" over which the district court has original jurisdiction "that they form part of the same case or controversy under Article III of

---

[15] Cole also argues that the district court should not have considered the second amended complaint's sufficiency before deciding whether to grant leave to amend.  But "leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *See Mizzaro*, 544 F.3d at 1255.  The district court properly assumed the truth of the allegations in the second amended complaint, avoided drawing inferences against Cole, and considered Cole's objections before deciding whether to adopt the R&Rs. *Doe*, 51 F.4th at 1302; *Mizzaro*, 544 F.3d at 1255. It then found that amendment would be futile, and it did not need to allow futile claims to move forward. *See Corsello*, 428 F.3d at 1014.

the United States Constitution." 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Additionally, in deciding whether to dismiss claims over which it has supplemental jurisdiction, the district court should consult the factors articulated in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), including "judicial economy, convenience, fairness, and comity." *Ameritox, Ltd. v. Millennium Laby's, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (quotation omitted). Where "the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (quotation omitted).

The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims because it had dismissed all of the Title VII federal claims. *See* 28 U.S.C. § 1367(c)(3); *Mergens*, 166 F.3d at 1119. Cole resists this conclusion, arguing that the district court erred in declining to exercise supplemental jurisdiction without explicitly discussing each of the *Gibbs* factors. But Cole has identified no authority holding that district courts must explicitly discuss the *Gibbs* factors on the record before declining to exercise supplemental jurisdiction. In any event, the magistrate judge's first R&R—which the district court adopted—explicitly referenced *Gibbs*, comity, and considerations impacting fairness (including, for example, Cole's

ability to refile the claims in state court under O.C.G.A. § 9-2-61(a)). Accordingly, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims.[16]

## III.    Conclusion

For the foregoing reasons, we affirm the district court's judgment.[17]

**AFFIRMED.**

---

[16] Cole also argues that the district court erred in resolving the amendment issue and the supplemental jurisdiction issue in a single order "without first recognizing that . . . grant[ing] [the amendment] would preserve jurisdiction." But, as discussed above, the court properly denied leave to file the proposed second amended complaint because amendment would have been futile. Thus, there was no error.

[17] We note with grave concern that Cole's initial appellate brief includes purported quoted material from five cases—*Pinnacle Advert. & Mktg. Grp. Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989 (11th Cir. 2021); *Perez-Priego v. Alachua Cnty. Clerk of Ct.*, 148 F.3d 1272 (11th Cir. 1998); *Akins v. Fulton County*, 420 F.3d 1293 (11th Cir. 2005); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989 (11th Cir. 1983), and *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)—but the asserted quoted material does not appear anywhere in these opinions. While it may be arguable whether the cases support the propositions counsel cited them for, we remind Cole's counsel that the Court relies on advocates to present their case on their client's behalf. Providing quotations that do not appear in the cited cases is a disservice to that obligation to the client and an abdication of counsel's duty to the Court.